Jack SCHMIDLING, Mike Regenfuss,
Larry Clark, et al., Plaintiffs–
Appellants,

v.

CITY OF CHICAGO, a municipal corpora-
tion and Richard M. Daley, in his offi-
cial capacity, Defendants–Appellees.

No. 92–1410.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1992.

Decided July 22, 1993.

Bret A. Rappaport, Asst. Atty. Gen., Schwartz, Cooper, Kolb & Gaynor, James A. Romanyak, Bell, Boyd & Lloyd, Gregory A. Stayart, Chicago, IL, for plaintiffs-appellants.

Mary F. Harkenrider, Anita K. Modak–Truran, Office of the Corp. Counsel, Kelly R.

Welsh, Benna R. Solomon, Timothy W. Joranko, Office of Corp. Counsel, App.Div., Chicago, IL, for defendants-appellees.

Before MANION and ROVNER, Circuit Judges, and REYNOLDS, Senior District Judge.[*]

MANION, Circuit Judge.

■ Jack Schmidling, Mike Regenfuss, Larry Clark, Debra Lynn Petro, and Rick Hyerczyk ("plaintiffs"), reside in the City of Chicago and cultivate natural gardens on their property. They sued the City of Chicago and Mayor Richard M. Daley[1] ("defendants") in federal court claiming a "genuine fear" of prosecution under the City's so-called weed ordinance, Municipal Code of Chicago § 7–28–120 (1990), which requires persons owning or controlling property within the City to keep the weeds on their property at an average height not exceeding ten inches. The district court dismissed the lawsuit because the plaintiffs lacked standing to sue. As an alternative ground for dismissal, the district court cited the doctrine of federal court abstention enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court also denied Schmidling and Clark leave to file a second amended complaint. The plaintiffs appeal, and we affirm.

## I. Background

The plaintiffs live in Chicago. Rather than having traditional lawns and gardens on their property, they maintain natural landscapes that include a variety of native Illinois wild flowers and prairie plants. The City of Chicago has a weed ordinance, which states in relevant part:

(a) Any person who owns or controls property within the city must cut or otherwise control all weeds on such property so that the average height of such weeds does not exceed 10 inches. Any person who violates this subsection shall be subject to a fine of not less than $50.00 nor more than $150.00. Each day that such violation continues shall be considered a separate offense.

* Hon. John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. The district court properly dismissed Mayor Daley, sued in his official capacity, as a party to this action. A lawsuit against Mayor Daley in his official capacity is the same as a lawsuit against the City of Chicago. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Consequently, Mayor Daley is not a party to this appeal.

(b) All weeds which have not been cut or otherwise controlled, and which exceed an average height of 10 inches, are hereby declared to be a public nuisance. If any person has been convicted of violating subsection (a) and has not cut or otherwise controlled any weeds as required by this section within 10 days after the date of the conviction, the city may cause any such weeds to be cut at any time. In such event, the person who owns or controls the property on which the weeds are situated shall be liable to the city for all costs and expenses incurred by the city in cutting the weeds.

Municipal Code of Chicago § 7–28–120(a)–(b) (1990).

In June 1991, the plaintiffs sued the defendants in federal court. In their first amended complaint, the plaintiffs sought both a declaratory judgment that the current weed ordinance is unconstitutional and a permanent injunction against the enforcement of the ordinance. They alleged that the ordinance denies them due process because it is vague and ambiguous; in particular, they claimed it fails to define the term "weed" or the term "average" and does not delineate the manner in which the "average height" of the weeds should be measured. The plaintiffs further alleged that because of its ambiguity and vagueness, the ordinance fails to give adequate notice of prohibited conduct and, thereby, invites arbitrary and discriminatory enforcement. Furthermore, they claimed the ordinance denies them equal protection of the law because it is not rationally related to any legitimate governmental interest.

Although not alleged in their first amended complaint, the plaintiffs state in their Initial Brief that the plants used in natural landscapes generally grow taller than ten inches in height. Apparently, the height of the plaintiffs' plants, not to mention the appearance of their plants, is one of the implicit reasons the plaintiffs are concerned the City will prosecute them under the current weed ordinance. (We make this point to give context to their lawsuit with respect to the ordinance and to note the omission from their first amended complaint.)

To demonstrate their standing to sue, the plaintiffs claimed they "genuinely fear" the City will prosecute them under the current weed ordinance. Although three of the plaintiffs (Regenfuss, Petro, and Hyerczyk) have never been cited or prosecuted under any weed ordinance, the City has cited Clark and Schmidling in the past. In 1984 and 1987, the City cited Clark for allegedly violating the previous version of the weed ordinance,[2] and the City cited Schmidling under the same ordinance in 1987, 1988, and 1989. The City dropped each charge, however, before either man was fined or penalized. Although the plaintiffs do not explain the details behind the dismissal of the charges against Clark, they do allege that the City dropped each citation against Schmidling after receiving a letter from him explaining his reasons for cultivating his natural garden.

The plaintiffs also claimed they "genuinely fear" prosecution because the City is currently prosecuting another natural gardener, Marie Wojciechowski, a nonparty to this lawsuit. The City first prosecuted Wojciechowski under the earlier weed ordinance in 1989. According to the plaintiffs' first amended complaint, "[a]fter a trial on the merits, the judge

---

2. The version of the weed ordinance that preceded the current version stated in pertinent part:

99–9. All weeds including weeds which due to pollination are a menace to health and weeds otherwise injurious to public health or welfare are hereby declared to be a public nuisance.

It shall be unlawful for any person owning or controlling any plot of ground to permit the growth of such weeds thereon.

All such weeds shall be cut, pulled, destroyed or chemically sprayed . . . by the owner or person in control of said plot of ground at least twice a year. . . .

The failure to destroy such weeds within the designated periods shall constitute a violation of this section.

When the owner or person in control of any plot of ground fails to destroy or spray weeds growing thereon as provided herein, the city official charged with the enforcement of this section shall destroy the said weeds, and any expense incurred by the city in so doing shall be a charge against the owner so failing, which may be recovered in an appropriate action in law instituted by the corporation counsel.

Municipal Code of Chicago § 99–9 (1970) (amended to current form Dec. 20, 1989).

ordered Ms. Wojciechowski to clean up certain debris in her yard, cut the plants so that they would not encroach on her neighbors [sic] yard and pay a $110.00 fine and court costs." In 1990, the City began its second prosecution of Wojciechowski under the current weed ordinance.[3] This prosecution was pending when the plaintiffs filed their federal suit.

The plaintiffs further claimed the City selectively enforces the weed ordinance. Although the City is prosecuting Wojciechowski, they claimed it has not prosecuted the following government agencies that also maintain natural landscapes: the David Lee Animal Control Center, the Illinois Department of Transportation, the Cook County Forest Preserve, and the Chicago Park District. Moreover, the plaintiffs alleged that other villages and municipalities have ordinances that prohibit weeds in excess of a certain height and that natural gardeners have been subject to prosecution under those ordinances. The plaintiffs offered no specifics, however, about which villages and municipalities have such ordinances and about which natural gardeners have been prosecuted under those ordinances.

Despite the plaintiffs' allegations of a "genuine fear" of prosecution, there are no pending citations against any of them for violating the current weed ordinance. None of the plaintiffs has ever been fined or penalized under either version of the weed ordinance, and the City has never threatened to enforce the current weed ordinance against any of the plaintiffs.

In November 1991, the defendants moved to dismiss the first amended complaint on the ground that the plaintiffs lacked standing to maintain the lawsuit. Relying on *Nuclear Engineering Co. v. Scott*, 660 F.2d 241 (7th

Cir.1981), the district court granted the motion because the plaintiffs had not alleged that their "genuine fear" of prosecution caused them any immediate coercive consequences. In addition, the district court *sua sponte* granted the motion to dismiss on the alternative basis of *Younger* abstention. The court ruled that abstention was apropos in light of the City's ongoing prosecution of Wojciechowski. The court wrote: "It would be an unwarranted interference in federal-state relations for this court to interpret a municipal ordinance and decide its constitutionality at a time that a state court is in the process of doing the same thing."

The plaintiffs then moved the district court to reconsider the judgment against them or, in the alternative, for leave to allow just Schmidling and Clark to file a second amended complaint to correct the pleading defects regarding standing. In the proposed second amended complaint, Schmidling and Clark alleged that the threat of enforcement (the past tickets and the pending prosecution of Wojciechowski) had immediate coercive consequences on them. As examples of these consequences, Schmidling and Clark alleged, among other things, that they both erected fences around their yards to block the view of their natural landscapes from the street and that Schmidling refrains from cultivating a natural garden on his front yard, even though he has useable land. The district court denied the motion to reconsider and the motion to amend the complaint. This timely appeal followed.

## II. Analysis

We have jurisdiction, 28 U.S.C. § 1291, to consider the three issues the plaintiffs raise on appeal. First, whether the district court erred in dismissing their lawsuit on the

---

3. Because the plaintiffs do not give any specifics in their first amended complaint or in their appellate briefs about the current prosecution of Wojciechowski, we have reviewed the initial complaint and first amended complaint in her state-court suit on our own initiative. *See Green v. Warden*, 699 F.2d 364, 369 (7th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). The City is charging Wojciechowski with having weeds in excess of ten inches in height on her property, thereby causing a public nuisance, and with storing pieces of lumber and

stacks of bricks on her property. *City of Chicago v. Wojciechowski*, No. 90-MCI-322079 (Cir.Ct. Cook County, Ill.). The fact that the City is prosecuting Wojciechowski for having bricks and lumber on her property separates her situation from the pristine gardeners who carefully nurture their yards. The second prosecution against Wojciechowski appears to have resulted from her not doing what the state trial judge ordered her to do after her first prosecution. As of oral argument, Wojciechowski's case was still pending in the Cook County Circuit Court.

ground that they lacked standing. Second, whether the district court erred in basing its dismissal on the alternative ground of *Younger* abstention. Third, whether the district court abused its discretion in denying Schmidling and Clark the right to file a second amended complaint.

*A. Standing*

■ To invoke a federal court's jurisdiction, a litigant must establish the existence of a case or controversy. U.S. Const. art. III, § 2; *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). To set forth the requisite Article III case or controversy, the litigant "must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). A litigant " 'does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.' " *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979).

■ The injury, however, cannot be abstract. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). "It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." *Id.* "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *Id.* Of course, "[t]he difference between an abstract question and a 'case or controversy' is one of degree . . . and is not discernible by any precise test." *Babbitt,* 442 U.S. at 297, 99 S.Ct. at 2308; *accord Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

■ In addition, "the litigant must satisfy the 'causation' and 'redressability' prongs of the Art. III minima by showing that the injury 'fairly can be traced to the challenged action,' and 'is likely to be redressed by a favorable decision.' " *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). A litigant must clearly and specifically set forth these Article III standing requirements with sufficient facts, because "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Id.* at 155–56, 110 S.Ct. at 1723.

■ In their first amended complaint, the plaintiffs did not allege any actual injury; as a result, we examine *de novo* their first amended complaint to determine whether they have alleged a sufficiently immediate threat of injury. *See Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991). In so doing, we accept as true all the material allegations in the complaint and construe the complaint in favor of the plaintiffs. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Prince,* 940 F.2d at 1106.

■ The plaintiffs alleged that they have a "genuine fear" of prosecution under the current weed ordinance, specifically because the City has ticketed two of them in the past for allegedly violating the previous version of the weed ordinance and because the City is currently prosecuting Wojciechowski under the present version of the ordinance.

■ Even though the City is prosecuting Wojciechowski under the current version of the weed ordinance, that does not necessarily mean the City will definitively prosecute the plaintiffs.[4] *Wisconsin's Envtl. Decade, Inc. v. State Bar of Wis.,* 747 F.2d 407, 412 (7th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985); *People v. General Elec. Co.,* 683 F.2d 206, 210 (7th Cir.1982), *cert. denied,* 461 U.S. 913, 103

---

4. Although the plaintiffs claim that they and Wojciechowski engage in the same type of gardening behavior, the record is unclear regarding the similarity between her garden and those of all the plaintiffs. Also, the City cited Wojciechowski not only for having weeds on her property, but for storing bricks and lumber on her property as well. *Supra* note 3. The existence of the bricks and lumber may have created some other hazard, nuisance, or health problem that motivated the City to issue the citation. No doubt the existence of the bricks and lumber is a difference between Wojciechowski's situation and the plaintiffs' situation.

S.Ct. 1891, 77 L.Ed.2d 282 (1983). To establish standing, the plaintiffs must also show that the City has threatened them with immediate prosecution under the current weed ordinance. *See Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. at 1607–08; *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974). The plaintiffs have failed to do so. The plaintiffs have instead claimed that the City ticketed Schmidling and Clark in the past for allegedly violating the earlier version of the ordinance. (The City dropped the tickets before either man was fined or penalized.) These allegations are deficient to establish a case or controversy.

In the first place, the ticketing of Schmidling and Clark is too attenuated in time to show a sufficiently immediate threat that the City will prosecute the plaintiffs. The plaintiffs brought their lawsuit in 1991. The last ticket Clark received was in 1987. The last ticket Schmidling received was in 1989. Since those dates, in addition to amending the ordinance, the City has neither prosecuted nor threatened to prosecute either man, *see, e.g., O'Shea,* 414 U.S. at 495–96, 94 S.Ct. at 675–76 (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects"), and the City has never cited, fined, prosecuted, or threatened the other three plaintiffs with prosecution under either version of the ordinance. The plaintiffs may consider the new ordinance unacceptable and they apparently think they are violating it, but without a showing of imminent enforcement, they have no Article III injury.

In the second place, a violation under the earlier ordinance is different from a violation under the present ordinance. The earlier ordinance set no height limit on weeds. The ordinance stated: "All weeds including weeds which due to pollination are a menace to health and weeds otherwise injurious to public health or welfare are hereby declared to be a public nuisance." Municipal Code of Chicago § 99–9 (1970) (amended to current form Dec. 20, 1989). In contrast, the current ordinance requires property owners or those who control property to cut all weeds so that

their average height is no greater than ten inches. *Id.* § 7–28–120(a) (1990). Accordingly, Schmidling and Clark could have been subject to prosecution for violating the earlier ordinance, but not necessarily be subject to prosecution for violating the current ordinance. Thus, the allegations of the past tickets—absent allegations of any immediate threat of prosecution under the current ordinance—fail to show a realistic danger that the City will certainly prosecute the plaintiffs under the present weed ordinance. *See Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2308–09; *O'Shea,* 414 U.S. at 495–96, 94 S.Ct. at 675–76; *Wisconsin's Envtl. Decade, Inc.,* 747 F.2d at 412; *General Elec. Co.,* 683 F.2d at 209–10.

 Moreover, although the plaintiffs have alleged that they have a "genuine fear" of being prosecuted, their allegations are inadequate to show that the City has caused that fear. We find no allegations in the first amended complaint that the City has threatened the plaintiffs in any way with prosecution under the current ordinance. For the purposes of determining standing, we are initially and primarily concerned with the threat of prosecution, not with a litigant's anticipation of it. *Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. at 1607–08; *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. The reason: anticipation, fervor of advocacy, speculation, or even fear is not enough by itself to establish standing. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 485–86, 102 S.Ct. 752, 765–66, 70 L.Ed.2d 700 (1982); *Nuclear Eng'g Co. v. Scott,* 660 F.2d 241, 252 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). A credible threat of direct injury to the litigant must exist. *See Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2308–09; *O'Shea,* 414 U.S. at 494, 94 S.Ct. at 675. As such, because the plaintiffs have not alleged sufficient facts to show that the City has threatened them with prosecution under the current weed ordinance, we find their claims of "genuine fear" unrealistic. *Steffel,* 415 U.S. at 459, 94 S.Ct. at 1215–16; *O'Shea,* 414 U.S. at 494, 94 S.Ct. at 675. Indeed, because the plaintiffs are not engaged in any constitutionally protected conduct or expression, this is not one of those

cases where the mere existence of a law can, under the correct circumstance, serve as a sufficient threat in and of itself to give a litigant standing to sue. *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308–09 ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' "); *e.g., New York State Club Ass'n v. City of New York*, 487 U.S. 1, 8–10, 108 S.Ct. 2225, 2231–33, 101 L.Ed.2d 1 (1988) (a consortium of private clubs obtained standing to sue because its member associations could have established standing on behalf of their members who were suffering immediate or threatened injury to their associational rights because of the enactment of a law, even though none had been charged); *Epperson v. Arkansas*, 393 U.S. 97, 98–102, 89 S.Ct. 266, 267–69, 21 L.Ed.2d 228 (1968) (biology teacher, although not yet charged criminally, obtained standing to challenge law that prohibited the teaching of evolution); *Kucharek v. Hanaway*, 902 F.2d 513, 516 (7th Cir.1990) (sellers of sexually explicit materials obtained standing to challenge newly enacted obscenity statute based on their reasonable fear of prosecution, even though they were not charged criminally), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). *But see Younger*, 401 U.S. at 42, 91 S.Ct. at 749–50 ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs....").

In sum, we affirm the district court for granting the defendants' motion to dismiss. We do not find the allegations in the first amended complaint to have demonstrated that the plaintiffs are in real and immediate danger of sustaining some direct injury as a result of the operation or enforcement of the weed ordinance. *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308–09; *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675; *General Elec. Co.*, 683 F.2d at 210. Our reason for affirming the district court varies somewhat from the one the court advanced in dismissing the amended complaint. The district court relied on *Nuclear*

*Engineering* to determine that the plaintiffs lacked standing. In that case, the Nuclear Engineering Company ("NEC") brought a federal suit after hearing the Illinois Attorney General announce at a press conference his intent to commence lawsuits at some future date against those persons, including NEC, whom he thought were violating Illinois environmental protection laws. *Nuclear Eng'g Co.*, 660 F.2d at 243–44, 252. We ruled that for NEC to establish standing based on this threat of future prosecution, it had to show that "the threat of enforcement [had] immediate coercive consequences of some sort upon [it]." *Id.* at 252. Therefore, in applying *Nuclear Engineering*, the district court here determined that the plaintiffs lacked standing because they did not demonstrate some immediate coercive consequence. For the district court to have reached that conclusion, though, it had to first find that the City had threatened the plaintiffs with future prosecution under the current weed ordinance. Yet, based on our *de novo* review of the first amended complaint, we conclude that the City has not threatened the plaintiffs with either immediate or future prosecution under the current weed ordinance.

## B. Abstention

The plaintiffs also argue that the district court erred in abstaining *sua sponte* on the basis of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which the court used as an alternative basis for granting the defendants' motion to dismiss. "Under *Younger*-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). Because we have already affirmed the district court on the basis that the plaintiffs lacked standing to bring their lawsuit, we do not need to reach this point on appeal.

## C. Motion to Amend

■ After the district court dismissed the plaintiffs' first amended complaint, the plain-

tiffs moved the court to reconsider the judgment against them. The court denied that motion. In the alternative, the plaintiffs moved for just Schmidling and Clark to file a second amended complaint to resolve the pleading defects the district court had noted in its order of dismissal. In that order, the district court stated that even though the plaintiffs had alleged a "genuine fear" of prosecution, they had to show that they suffered some immediate coercive consequences to achieve standing. In light of the court's conclusion, Schmidling and Clark alleged in their proposed second amended complaint that the threat of prosecution (the past tickets and the Wojciechowski suit) caused them to suffer immediate coercive consequences. For instance, they alleged that they had to build fences around their yards to block the view of their natural landscapes from the street. The court denied the motion to amend.

In their proposed second amended complaint, Schmidling and Clark rely on the same claims of threatened prosecution the plaintiffs raised in the first amended complaint, that is, the past tickets and the prosecution of Wojciechowski. We have already ruled that those allegations do not demonstrate a credible or realistic threat that the City will prosecute any of the plaintiffs under the current ordinance now or in the future. *See Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308–09. Thus, the actions Schmidling and Clark allege they have taken do not represent steps taken in response to some genuine threat of future prosecution, but represent steps taken in response to their speculative and imaginary fear of prosecution. *See, e.g., id.* If anything, these prudent measures reduced the possibility of prosecution under the current ordinance. Consequently, the district court did not abuse its discretion in denying the motion to file a second amended complaint. *See Perkins v. Silverstein,* 939 F.2d 463, 471–72 (7th Cir.1991); *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991).

### III. Conclusion

The district court properly dismissed the lawsuit on the basis of standing; as such, we do not need to reach the abstention question.

The district court also did not abuse its discretion in denying the motion to file a second amended complaint. Accordingly, the district court is AFFIRMED.

REYNOLDS, Senior District Judge, concurring.

I disagree with the majority's conclusion that plaintiff-appellant Jack Schmidling lacks standing to challenge the Chicago weed ordinance. Schmidling was three times threatened with prosecution under the previous ordinance, the most recent citation having been issued in 1989, less than two years before this lawsuit was filed. The ordinance was amended in 1990, but not in any way that reduces the likelihood of Schmidling being cited again. Another natural gardener, Marie Wojciechowski (not a party to this action), has been cited and prosecuted under both versions of the ordinance, and her garden (or weed-patch, depending on your point of view) is identical to Schmidling's for purposes relevant to the weed ordinance.

Under these circumstances, I think Schmidling has established a "credible threat of prosecution," thereby satisfying the case or controversy requirement of Article III. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979). *See Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974) (two prior warnings to cease handbilling, combined with prosecution of plaintiff's "handbilling companion" create Article III controversy). The majority's characterization of Schmidling's fear of prosecution as "speculative and imaginary" should be, and usually is, reserved for cases in which the plaintiff "feel[s] inhibited" by the mere existence of a law; it is not an appropriate characterization where the plaintiff has received actual, formal threats of prosecution. *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749–50, 27 L.Ed.2d 669 (1971); *Steffel,* 415 U.S. at 459, 94 S.Ct. at 1215–16.

Nevertheless, I concur with the result reached by the majority because I believe plaintiffs have no hope of prevailing on the merits of their constitutional claims. Were the issue to be reached, the weed ordinance

would be found neither unconstitutionally vague nor irrational.