Thomas D. HAYS, et al., Plaintiffs–
Appellants,

v.

CITY OF URBANA, ILLINOIS,
Defendant–Appellee.

No. 96–2425.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1996.

Decided Jan. 6, 1997.

Rehearing Denied Jan. 22, 1997.

J. Steven Beckett (argued), Holly Clemons, Beckett & Webber, Urbana, IL, for plaintiffs–appellants.

Stephen J. Holz (argued), Jack Waaler, City of Urbana, Urbana, IL, for defendant–appellee.

Before CUMMINGS, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Section 8 of the United States Housing Act, 42 U.S.C. § 1437f, provides subsidies for low-income renters. So far as the national government is concerned, landlords may decide whether to participate in § 8 programs. So far as the City of Urbana, Illinois, is

concerned, landlords must participate. In January 1996 the City added "source of income" to the list of characteristics that landlords may not consider when choosing tenants. The function and admitted purpose of this ordinance is to require lessors to treat § 8 subsidies and vouchers the same way they treat cash; if they lease to tenants who pay from their income or savings, they must also lease to tenants who pay from the federal Treasury. Several real estate owners and managers, who do not want to accept the strings that the national government attaches to participation in the § 8 program, filed this suit under 42 U.S.C. § 1983, seeking a declaration that § 8 preempts any local ordinance that requires renters to join the federal program. According to *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), such a claim may be raised using § 1983 when the adversary is a municipality, even though preemption usually is no more than a defense to a claim filed in state court.

Relying on *Schmidling v. Chicago*, 1 F.3d 494 (7th Cir.1993), the district court dismissed the complaint for want of a case or controversy justiciable under Article III of the Constitution. In the district court, Urbana's City Attorney represented that he had no immediate plan to prosecute any of the defendants for noncompliance with the amended ordinance. Absence of any looming threat of prosecution, the district judge concluded, means that plaintiffs lack standing. Some language in *Schmidling* supports that conclusion. Several persons who cultivated "natural gardens" containing "a variety of native Illinois wild flowers and prairie plants" (1 F.3d at 495) sought an injunction against the application of Chicago's weed-control ordinance. We held that they lacked standing, because they did not face prosecution: on the natural gardeners' own theory their plants were not "weeds," and they were not entitled to an order from a federal court instructing Chicago to avoid *mis*-applying local laws. Cf. *Pennhurst School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Although the plaintiffs in *Schmidling* argued that Chicago's ordinance was too vague, proof of that proposition depended on application, and the City had not

attempted to apply the ordinance in a way that would create a genuine vagueness problem. Prosecutions under an earlier version of the weed-control ordinance, and an ongoing prosecution of a natural gardener whose plants encroached on a neighbor's yard, did not establish a threat of injury from any proper application of the law to the plaintiffs, we held. Then the panel added: "To establish standing, the plaintiffs must also show that the City has threatened them with immediate prosecution under the current weed ordinance." 1 F.3d at 499. It was this language, coupled with the City Attorney's statement, that led the district court to conclude that Urbana's real estate owners and managers lack standing.

■ The passage we have quoted from *Schmidling* was unnecessary to the disposition, and this brief dictum cannot be considered authoritative. Long ago, the Supreme Court held that a person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of prosecution is not immediate—indeed, even if the law is not yet in effect. See, e.g., *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (suit commenced four years before law was to take effect, and resolved on the merits by the Supreme Court two years before its effective date); *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."). What is necessary for standing is a concrete injury, redressable by success in the litigation. Costs of compliance necessary to avoid prosecution can constitute that injury. Plaintiffs have alleged that compliance would be costly, because the federal government would require longer lease terms and lengthy procedures to evict tenants. These costs would be avoided if they prevail. The City Attorney has not announced that the amended ordinance is a dead letter, never to be enforced; he represents only that he will not prosecute the plaintiffs until he has evidence that they have violated the law. If

such a declaration prevents adjudication under Article III, then persons affected by a law always must bear either the costs of compliance or the penalties for noncompliance if they want an adjudication. *Pierce* and *American Booksellers* hold that they need not. Urbana suggests that these cases establish a special rule for constitutional claims, but their approach was extended to business regulation by *Abbott Laboratories v. Gardner*, 387 U.S. 136, 153–54, 87 S.Ct. 1507, 1517–19, 18 L.Ed.2d 681 (1967), which held that businesses potentially affected by a regulation may pursue pre-enforcement challenges to learn whether they must incur the costs of compliance. The City Attorney's representation that no prosecution is in the offing, because he has no evidence of any violation, therefore does not deprive the plaintiffs of standing.

■ Plaintiffs lack standing nonetheless, because they have not alleged that the amended ordinance requires them to bear costs of compliance. They contend that enrolling in the § 8 program would be costly, and at the pleadings stage such allegations must be accepted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). But plaintiffs will not be in a position to discriminate according to potential tenants' "source of funds," and therefore will not need to sign up, unless the federal government is willing to pay the rent at apartments they own or manage. The complaint is silent on this subject, and plaintiffs do not contend that any current or potential tenants could receive § 8 assistance at their properties.

Section 8 establishes two kinds of programs: "certificate" and "housing voucher". Persons eligible under the certificate program tender a federal certificate in full payment of their rent—but only at apartments renting for less than 120 percent of a defined "fair market rental". 42 U.S.C. § 1437f(c)(1). Plaintiffs have not alleged that any of their apartments carries a monthly rental less than or equal to the rate that makes them available to tenants who have § 8 certificates. At depositions, all of the plaintiffs (or their representatives) either conceded that none of their apartments qualifies for the certificate program or professed ignorance about that subject. As for housing vouchers: neither the complaint nor any of the later documents in the case (including plaintiffs' appellate brief, see *American Inter–Fidelity Exchange v. American Re–Insurance Co.*, 17 F.3d 1018, 1021–22 (7th Cir. 1994)) contends that Urbana's public housing agency has elected to participate in that program, see § 1437f(*o*), let alone that any of the rental units is eligible for participation.

The district judge took note that "plaintiffs have not made an allegation or made submissions that would support the claim that the plaintiffs have rental properties that would qualify for Section 8 support." Plaintiffs' brief on appeal ignored this problem. When the City urged it as an alternative ground of affirmance, plaintiffs answered in their reply brief (citations omitted):

> Defendant also raised an issue as to whether or not plaintiffs have apartments in Urbana that qualify for Section 8. Noticeably absent in the amended ordinance was any reference that only landlords with apartments that qualify for the Section 8 program would be prosecuted. The amended ordinance was written in a way that the only issue was whether or not landlords have violated the amended ordinance by refusing to rent to Section 8 tenants. Whether or not plaintiffs had apartments that qualify for Section 8 under the certification program had no bearing on Defendant's opportunity to prosecute. Under the voucher program, "qualifying" apartments was not an issue, as all Section 8 voucher participants had the right to rent under the ordinance.

The brief is silent about the certificate program and does not furnish us any reason to believe that in Urbana there are any "voucher participants." Perhaps plaintiffs want to have things both ways: they would like a court to override the ordinance, but, if they lose, they want to be able to say that they *still* needn't rent to § 8 tenants.

Everyone likes a no-lose position. But litigants who can't lose can't win either, for only the risk of loss avoids making the case a quest for an advisory opinion. Plaintiffs' submission that it does not matter whether

any of their apartments qualifies is not bolstered by argument, and it does not make sense. Urbana told the plaintiffs that they could not discriminate according to tenants' "source of funds," but if the federal government will not pay for low-income tenants to occupy plaintiffs' apartments, then § 8 is not a "source of funds." At oral argument, plaintiffs' counsel invited us to tour the record in search of information that might support a conclusion that some residents of Urbana hold housing vouchers that could be used at their apartments, but this is not how litigation works. Judges resolve the parties' disagreements; a litigant who has some contention to make must advance it, and the elements of standing do not differ from the other essential ingredients of a party's case. *Defenders of Wildlife*, 504 U.S. at 561–62, 112 S.Ct. at 2136–37. Plaintiffs were silent on this question in their complaint, in the district court, in their opening brief, and in their reply brief. Oral argument is too late.

AFFIRMED