NOTE:   This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1527

OREN TAVORY,

Plaintiff-Appellant,

v.

NTP, INC.,

Defendant-Appellee.


G. Donovan Conwell, Jr., Conwell Kirkpatrick, P.A., of Tampa Florida, argued for plaintiff-appellant.

Kevin P. Anderson, Wiley Rein LLP, of Washington, DC, argued for defendant-appellee.  With him on the brief was James H. Wallace, Jr.

Appealed from:  United States District Court for the Eastern District of Virginia

Chief Judge James R. Spencer

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1527


OREN TAVORY,

Plaintiff-Appellant,

v.

NTP, INC.,

Defendant-Appellee.


Appeal from the United States District Court for the Eastern District of Virginia in case no. 3:06-CV-628, Chief Judge James R. Spencer.

_____

DECIDED: October 27, 2008

_____


Before MICHEL, Chief Judge, NEWMAN and BRYSON, Circuit Judges.

Opinion for the court filed by MICHEL, Chief Judge. Concurring opinion filed by NEWMAN, Circuit Judge.

Plaintiff-Appellant Oren Tavory appeals from the grant of summary judgment in favor of Defendant-Appellee NTP, Inc., on his claim for correction of inventorship of U.S. Patent Nos. 5,436,960; 5,438,611; 5,625,670; 5,631,946; 5,819,172; 6,076,451; and 6,317,592 (collectively, "patents-in-suit").[1] Tavory also appeals the district court's dismissal of his state law unjust enrichment claim, and its denial of leave to amend the complaint to add a claim for "federal equitable relief."

---

[1] The district court also granted summary judgment on Tavory's copyright infringement claim. Tavory does not appeal that portion of the district court's judgment.

We affirm the grant of summary judgment because Tavory failed to raise a genuine issue of material fact as to his alleged contribution to the conception of the inventions claimed in the patents-in-suit. We also affirm the district court's dismissal of Tavory's unjust enrichment claim because it is preempted by 35 U.S.C. § 262. Finally, we affirm the district court's denial of leave to amend the complaint because the court did not abuse its discretion in holding that Tavory's "federal equitable relief" claim was duplicative of his already-pled claims and thus futile.

## I. BACKGROUND

The facts of this case are related to those in NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282 (Fed. Cir. 2005) ("RIM litigation"). In late 1989, Tavory was hired as a consultant by Telefind, a small telecommunications start-up based in Florida that was engaged in the operation of a nationwide paging network. Tavory was an experienced computer programmer, particularly in the UNIX operating system environment. At that time, Tom Campana was an executive at Telefind but was also the president of ESA, a small engineering consulting firm based in Chicago. ESA had a close working relationship with Telefind at all times relevant to this appeal.

Telefind employees used an internal e-mail system in 1990. This e-mail system was not connected to the Internet, as it existed at the time, but operated entirely on an internal computer network. Telefind also issued its employees pagers. Prior to 1990, these pagers were only used to receive traditional phone number pages. In early 1990, Telefind employees began to use a new capability wherein they could address e-mails from their usual computer e-mail programs to pagers as well as other computers. When such an e-mail was sent, the recipient pager would beep and receive the e-mail

automatically without any action from the user.  The e-mail would be displayed serially across the single-line display of the pager.

According to former Telefind employees, Tavory was generally considered at Telefind to be the person who had created the computer program that provided this new e-mail-to-pager functionality.  He demonstrated the first such e-mails to colleagues at Telefind, and the President of Telefind, Andy Andros, publicly acknowledged Tavory's work at a Telefind staff meeting in early 1990.

Also in 1990, Campana and others at Telefind became involved in an effort to secure new investment from AT&T.  These efforts resulted in a development project wherein Telefind and ESA worked to create a system for AT&T to take e-mail from a conventional e-mail system, transmit it wirelessly to a pager via the Telefind network, and then transfer the e-mail from the pager to a laptop computer.  Tavory was involved as a programmer for this project, as were Mike Ponschke and Gary Thelen, two programmers at ESA.  The project team was able to create a working system before November 1990 when Campana demonstrated it at a large trade show to much acclaim.

Nevertheless, Telefind ran out of funds in 1991 and began to collapse.  Tavory thus left Telefind.  Meanwhile, Campana and Telefind's attorney, Donald Stout, formed NTP in early 1991.  In May 1991, Stout filed a patent application on behalf of Campana generally claiming the system Telefind and ESA had developed during the AT&T project.  Campana, Ponschke, and Thelen were listed as co-inventors.  Among other things, Stout appended a copy of code Tavory helped write for the AT&T project to the application.  Ultimately, this patent application resulted in all of the patents at issue in this appeal.

In November 2001, NTP filed suit against Research in Motion, Ltd. ("RIM") accusing RIM's Blackberry systems of infringing the same patents at issue here.  See NTP, Inc., 418 F.3d at 1287, 1290 (Fed. Cir. 2005).  As part of that litigation, in 2002, Tavory was deposed as a witness for NTP.  He did not make any claim of inventorship at his deposition.  NTP won a jury verdict awarding over $50 million in damages, and the district court awarded a permanent injunction, which it stayed pending appeal.[2]  On appeal, this court affirmed-in-part, reversed-in-part, vacated-in-part, and remanded.  Id. at 1287.  RIM elected to settle and agreed to take a license to resolve all past and future infringement.  The settlement paid NTP $612.5 million.  Campana died prior to the settlement.

In September 2006, less than a year after the RIM settlement, Tavory filed the present suit claiming:  (1) correction of inventorship to add Tavory as a co-inventor to each of the patents at issue, (2) copyright infringement, and (3) unjust enrichment.  NTP moved to dismiss the copyright and unjust enrichment claims.  On December 26, 2006, the district court dismissed the state law unjust enrichment claim as preempted by both federal patent and copyright law.  Tavory soon thereafter moved for leave to amend his complaint to add a claim for "federal equitable relief," but the district court denied leave on March 6, 2007, on futility grounds.  After the close of discovery, NTP moved for summary judgment as to the inventorship and copyright claims.  The district court granted summary judgment, holding that (1) it lacked subject matter jurisdiction over the copyright infringement claim because Tavory obtained his copyright registration using a facially inadequate copy of his software, thus rendering the registration invalid; (2) in the

---

[2]     The RIM litigation was decided prior to the Supreme Court's decision in eBay Inc. v. MercExchange L.L.C., 547 U.S. 388 (2006).

alternative, NTP was entitled to judgment on the copyright claim under the doctrines of equitable estoppel, judicial estoppel, laches, and fair use; and (3) Tavory had failed to present sufficient independent evidence to corroborate his inventorship allegations. Tavory v. NTP, Inc., 495 F. Supp. 2d 531 (E.D. Va. 2007). Tavory then timely filed this appeal.[3] We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Inventorship

The district court granted summary judgment rejecting Tavory's inventorship claim, holding that Tavory had failed to adduce sufficient independent evidence corroborating his own testimony that he was a co-inventor of the patents-in-suit to raise a genuine issue of material fact. We review a district court's grant of summary judgment de novo. Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002).

A patent is presumed to name the correct inventors, thus a putative unnamed co-inventor must prove his inventorship by clear and convincing evidence. Hess v. Adv. Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997). The "touchstone" of inventorship is conception, which requires a "definite and permanent idea of the complete and operative invention." Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quoting Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986)). A co-inventor must prove he contributed to this conception of the claimed invention. Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998). The contribution must be more than simply the exercise of

---

[3] The district court subsequently awarded attorneys' fees to NTP under 17 U.S.C. § 505. Tavory v. NTP, Inc., 2007 WL 2965048 (E.D. Va. 2007). Tavory separately appealed the fees award to this court, now pending as Appeal No. 2008-1090.

ordinary skill in the art.  Id.  Simply reducing to practice that which has been conceived by others is insufficient for co-inventorship.  Id.

However, a co-inventor need not contribute to the conception of every claim of a patent; a single claim is sufficient.  35 U.S.C. § 116; Ethicon, 135 F.3d at 1460.  And he need not "make the same type or amount of contribution" as the other co-inventors.  35 U.S.C. § 116; Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1381 (Fed. Cir. 2004).  As a result, no individual co-inventor need have a "definite and permanent idea of the complete and operative invention" so long as all of the co-inventors collectively satisfy that requirement.  See 35 U.S.C. § 116; Gemstar, 383 F.3d at 1381; Burroughs, 40 F.3d at 1228.

A co-inventor's own statements are inadequate to prove conception as a matter of law and thus must be corroborated by independent evidence.  Ethicon, 135 F.3d at 1461.  This evidence can be in the form of contemporaneous documents or the oral testimony of an independent witness.  Id.; Gemstar, 383 F.3d at 1382.  The evidence must establish that the inventor(s) made a "contemporaneous disclosure that would enable one skilled in the art to make the invention."  Burroughs, 40 F.3d at 1228.  In the co-inventor context, the contemporaneous disclosure must enable a skilled artisan to practice the portion of the invention that the co-inventor contributed.

Here, Tavory alleges that he conceived of an "interface switch," a claim limitation in multiple claims of each patent-in-suit.  The district court construed this claim term in the RIM litigation as "a device or system, which includes a processor, that transmits electronic mail messages to a wireless system for delivery to a mobile processor," and the parties here do not dispute that this is the correct construction of the term.  See J.A.

at 1531. Tavory argues that he wrote the software disclosed in the patents that serves as the interface switch. It is undisputed that the interface switch is a vital component of the invention claimed in the patents-in-suit. The question, however, is (1) whether conception of the interface switch was more than just the exercise of ordinary skill, and (2) whether Tavory produced sufficient evidence to raise a triable issue as to whether he did, in fact, conceive of the interface switch that is part of the claimed invention.

We conclude that Tavory failed to demonstrate that his activities relating to the interface switch involved anything more than just the exercise of ordinary skill. Tavory first argues that the combination of his interface switch with a prior art RF network and e-mail system was the key to the claimed invention. Even assuming this is true, however, Tavory has not established that the interface switch itself was not in the prior art. An invention may be novel and non-obvious as a whole and yet be a combination of elements that are all individually well-known in the prior art by skilled artisans.

Tavory does, in a single sentence, aver that "the interface switch is not prior art," but he relies solely on the declaration of a patent attorney who is not a person of ordinary skill in the art.[4]  See Appellant's Br. at 6 (citing J.A. at 964-66). While he proffered the declaration of a technical expert to the district court, that expert only discusses why the interface switch is the most important component of the claimed invention and never states that it is novel or non-obvious  Therefore, because Tavory

---

[4]    The affiant, James T. Beran of Richmond, states that he is an experienced patent prosecutor and a former patent examiner in the area of computer software. While he does state that he has a master's degree in electrical engineering and took coursework in computer programming, he does not claim to be a person of ordinary skill in the art and only claims knowledge relating to patent prosecution. His opinion that the interface switch is not in the prior art is based solely on his interpretation of the language of the patents themselves in light of patent drafting conventions.

has not provided any competent evidence that his alleged contribution to the claimed invention—the interface switch—was the result of anything more than the exercise of ordinary skill in the art, he has failed to establish co-inventorship.

We also conclude that Tavory failed to provide sufficient corroborating evidence that he <u>conceived</u> of the interface switch. It is undisputed that he wrote the source code appended to the eventual patent application as an embodiment of the interface switch. Thus, he clearly contributed significantly to the reduction of the claimed invention to practice by reducing the interface switch to practice. However, he must prove <u>conception</u> of the interface switch to be a co-inventor, and thus he must demonstrate that he made a contemporaneous enabling disclosure. <u>See</u> <u>Burroughs</u>, 40 F.3d at 1228. He indisputably lacks any contemporaneous documents evidencing such a disclosure and relies instead on the testimony and declarations of various witnesses.

These witnesses generally testify that in early 1990, Telefind employees (including some of the witnesses) were able to send e-mail from their desktop computers to their and other employees' pagers such that the pagers received the e-mail messages automatically without any action from the pager owners.[5] They further testified that it was generally known in the company, and the company's president, Andrew Andros, specifically informed them, that Tavory wrote a computer program that provided this capability. Many of them testified that their first experience with this

---

[5]     NTP insinuates that these Telefind devices were not used with "e-mail messages" but rather a proprietary system called "MessageWriter" that translated text into audible tones sent through a normal telephone handset. At least some of Tavory's witnesses clearly testified, however, that the messages were "e-mail" sent from a <u>computer terminal</u> (and not a telephone-based device like Message Writer). <u>See, e.g.</u>, J.A. at 816, 825. In any event, for the purpose of summary judgment, we cannot accept NTP's view of these facts.

capability was at a luncheon where Tavory's pager automatically received an alphanumeric message that he claimed came from Telefind's e-mail system. Some witnesses testified that Tavory earlier told them of his intention to create such a program. Ponschke and Thelen of ESA testified that Tavory and Telefind were responsible for creating a program to send e-mail messages from the e-mail system to the Telefind pager network.

However, no witness saw Tavory creating the program, and none testified as to any technical details either learned from Tavory or seen first-hand. No one testified about ever seeing Tavory's code, and no contemporaneous copy of the code or documentary evidence of the program is in the record. Moreover, no testimony or any other record evidence indicates whether the contemporaneous information testified to by Tavory's witnesses would enable a person of ordinary skill in the art to create a program like the one Tavory allegedly created. Thus, the testimony Tavory relies on fails to raise a genuine issue of <u>material</u> fact because they do not bear on <u>conception</u> and do not indicate Tavory ever made a contemporaneous enabling disclosure.

Tavory argues that he need not establish an enabling disclosure because he established that he "reduced to practice" his interface switch. He relies on <u>Pfaff v. Wells Electronics, Inc.</u> for the rule that reduction to practice, if proven, also establishes conception. 525 U.S. 55, 66 (1998). That and other comparable cases, however, involve reduction to practice of the <u>entire</u> invention. As noted earlier, components of an invention may themselves be entirely in the prior art so reducing such a component to practice is not evidence of any inventive conception. And in the context of an alleged unnamed co-inventor, the requirement that his contribution be more than the exercise of

ordinary skill means that he cannot prove such a contribution by only showing activities amounting to reduction to practice because reduction to practice by definition is merely the exercise of ordinary skill. See Burroughs, 40 F.3d at 1228 ("Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.") (emphasis added).

Tavory also argues that none of the named inventors had any UNIX programming abilities and thus he must have been a co-inventor because Telefind's server was a UNIX machine. However, inventors are not required to have known how to reduce their conceived inventions to practice to establish conception. Thus, Campana's lack of programming savvy and Tavory's UNIX expertise may establish that Tavory was instrumental in reduction to practice, but they are irrelevant here to conception.[6] And any defects in Campana's conception or inventorship, which Tavory argues at length, are not relevant here where Tavory did not plead any challenge to the named inventors' inventorship. In other words, even if Campana and his co-inventors did not conceive of the invention, that fact alone does not prove that Tavory did conceive of the interface switch.

Therefore, we conclude that Tavory failed to establish a genuine issue of material fact as to his inventorship of the patents-in-suit. As a result, we affirm the district court's grant of summary judgment as to Tavory's correction of inventorship claim.

---

[6] Such circumstances could have been probative of conception if, for example, the claims of the patents-in-suit specifically required UNIX programming or limitations specific to UNIX servers. But no claim recites any such limitation here.

## B.    Unjust Enrichment

We next turn to Tavory's contention that the district court erred in dismissing his state law unjust enrichment claim for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  The district court held that his unjust enrichment claim is preempted by federal patent law.[7]  We review the grant of a motion to dismiss without deference.  Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993).  Dismissal is only proper when, based on the pleadings, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  All factual disputes must be resolved, and all reasonable inferences drawn, in favor of the non-movant.  Adv. Cardiovascular Sys., 988 F.2d at 1160-61.

Federal Circuit law governs whether federal patent law preempts a state law claim, a question we review de novo.  Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1376 (Fed. Cir. 2005).  An unjust enrichment claim is preempted by federal patent law when it conflicts with "the accomplishment and execution of the full purposes and objectives of Congress."  Id. at 1377 (quoting Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979)).

Tavory's complaint alleges that NTP "has received substantial and valuable benefits from Tavory in the form of royalties, payments or other compensation for the use of Tavory's wireless email invention and of [Tavory's] Push Software," and that "it would be inequitable and unjust for Defendant, NTP, to retain the benefit of the use of

---

[7]    The district court alternatively held that the unjust enrichment claim is preempted by federal copyright law.  We need not reach this holding because we affirm the district court's holding that the claim is preempted by federal patent law.  We also do not reach NTP's argument that the claim is barred by Virginia's statute of limitations.

the Tavory invention and the Tavory Push Software without payment to Tavory for the fair value of such use." J.A. at 51. As is clear from the complaint, Tavory's allegations only concern NTP's activities regarding the patents-in-suit, and the complaint does not allege any other uses of his "wireless email invention" or "Push Software" by NTP. See J.A. at 44-45 (Tavory's complaint alleging that NTP's patents incorporate his "wireless email invention" and "Push Software" and that he "contributed to the conception of the inventions reflected" in the patents-in-suit). These activities would include, Tavory asserts, the license agreement and related payments received by NTP in its settlement with RIM in the RIM litigation. Thus, Tavory's unjust enrichment claim essentially seeks his share of monies received by NTP from the licensing and enforcement of the patents-in-suit, such as those from the RIM settlement, which he is allegedly entitled to due to his contribution to the conception of the invention claimed in those patents, i.e., because he is the co-inventor of those patents.

Under 35 U.S.C. § 262, a patent's co-owner may "make, use, offer to sell, or sell the patented invention" without the consent of the other co-owners and without accounting to the co-owners. We have held that licensing is also covered by § 262. Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 196 F.3d 1366, 1373 (Fed. Cir. 1999) ("Cyanamid IV"). Thus, any of the co-owners of the patents-in-suits may license the patents-in-suit without obtaining the approval of, or accounting to, the other co-owners. As a result, even if we accept for the purpose of reviewing the Rule 12(b)(6) dismissal Tavory's contention that he is a co-inventor of the patents-in-suit, he would still not be entitled, under § 262, to any portion of the revenues from NTP's licensing activities since it is undisputed that NTP is the legitimate assignee of Campana's interests in the

patents-in-suit.  Tavory cannot sidestep § 262 through a state law unjust enrichment claim; such a claim is preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting § 262, as the district court correctly held.

Tavory argues that <u>Cyanamid IV</u> and <u>University of Colorado Foundation, Inc. v. American Cyanamid Co.</u>, 342 F.3d 1298 (Fed. Cir. 2003) ("<u>Cyanamid VI</u>"), support his argument that his unjust enrichment claim is not preempted.  In these <u>Cyanamid</u> cases, scientists at the University of Colorado conceived of certain pharmaceutical formulations of prenatal vitamins that increased the absorption of iron far beyond existing vitamins. <u>Cyanamid VI</u>, 342 F.3d at 1301-02.  Although their research was prompted by a request from Cyanamid, the conception of the formulations was entirely by these scientists alone.  <u>Id.</u> at 1304.  The scientists provided Cyanamid with a confidential copy of a manuscript they intended to publish; Cyanamid then filed a patent application on the scientists' formulations claiming its own employee as the sole inventor and even copying verbatim from the manuscript.  <u>Id.</u> at 1303.  The scientists filed suit and pled unjust enrichment based on their allegation that Cyanamid's patent was obtained unfairly from the scientists' confidential disclosure.  We held this claim was not preempted by federal patent law because it sought restitution for unfair use of confidential information, not any patent-like protection over an unpatentable or publicly-available technology.  <u>Id.</u> at 1306-07.  In other words, the scientists were not seeking any patent-like remedy; rather, they sought to deprive Cyanamid of an unfair benefit it gained by breaching the scientists' confidence.

Tavory argues that he alleged in his complaint that he provided his software to Campana in confidence. However, unlike in Cyanamid, whether or not a breach of confidence occurred has no real bearing on Tavory's claim. In Cyanamid, Cyanamid's alleged breach of confidence resulted in a fraudulently-obtained patent they did not deserve. Thus, whether a confidential relationship existed—in fact, we likened it to an implied contract for non-disclosure—was central to the unjust enrichment claim. Cyanamid VI, 342 F.3d at 1306. Here, Tavory did not allege in his complaint that the named inventors should not have received the patents or that they were not in fact inventors of the claimed invention. Thus, whether Campana breached any confidences owed to Tavory to obtain the patents-in-suit is inapposite. Rather than seeking to deprive NTP of an ill-gotten benefit, Tavory seeks to have his alleged fair share of the benefit and acknowledges that the named inventors also deserve a share. This type of unjust enrichment claim is precisely what we held was preempted by federal patent law in Ultra-Precision. There, we noted that Ultra-Precision could not claim that Ford had received the type of unfair benefit as in the Cyanamid cases because Ultra-Precision only claimed co-inventorship in Ford's patent, and "Ford's ability to use the invention claimed in the '312 patent is unencumbered by the existence of any co-inventors [under 35 U.S.C. § 262]." Ultra-Precision, 411 F.3d at 1381.

Tavory also argues that § 262 does not apply here because (1) he is a co-inventor but not a co-owner, and (2) § 262 does not apply to "resolv[ing] infringement litigation," i.e., the RIM settlement. Appellant's Br. at 43-47. The former argument is meritless because Tavory has not alleged that he ever assigned or transferred his ownership interest in the patents at issue (if any). Therefore, if he is adjudged to be a

co-inventor, he is also by definition a co-owner. Tavory's latter argument, at least with regard to the RIM settlement, fails because the RIM settlement agreement was a license, and as already noted, licensing by co-inventors is covered by § 262. <u>See Cyanamid IV</u>, 196 F.3d at 1373. But even if it had been an award of damages by the court, and to the extent Tavory also seeks compensation relating to other litigation awards NTP may have received, Tavory's claim to a portion of such awards is also entirely dependent on whether he is a co-owner. A patent infringement suit must join all of the co-owners for standing purposes. <u>Ethicon</u>, 135 F.3d at 1467. Thus, Tavory's entitlement here to a portion of any benefits from the enforcement of the patents-in-suit in patent infringement actions stems solely from his entitlement to being joined as a co-owner. Here, since Tavory's status as a co-owner depends entirely on whether he was a co-inventor,[8] the dispositive issue is Tavory's alleged co-inventorship, which is governed exclusively by federal patent law. <u>See Cyanamid IV</u>, 196 F.3d at 1372. Therefore, we affirm the district court's dismissal of Tavory's unjust enrichment claim as preempted by federal patent law.

### C. "Federal Equitable Relief"

Finally, we address Tavory's argument that the district court erred in denying him leave to amend his complaint to add a claim for "federal equitable relief." We apply the law of the regional circuit in reviewing denials of leave to amend a pleading. <u>Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys. LLC</u>, 350 F.3d 1327,

---

[8]    If, however, Tavory's co-ownership did not depend on resolving inventorship or any other issue governed exclusively by federal law, his unjust enrichment claim may not be preempted because ownership, as distinct from inventorship, is generally governed by state law. <u>See Jim Arnold Corp. v. Hydrotech Sys., Inc.</u>, 109 F.3d 1567, 1572 (Fed. Cir. 1997).

1342 (Fed. Cir. 2003). Here, we review the district court's denial of leave to amend a pleading for an abuse of discretion. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). Leave to amend may properly be denied where the amendment would be futile. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). The district court held that amending a complaint with a new claim that could not withstand a motion to dismiss under Rule 12(b)(6) would be futile. See Schmidling v. City of Chicago, 1 F.3d 494, 501 (7th Cir. 1993). We agree, and Tavory does not seriously challenge this view.

Tavory argues in large part that the district court erred in denying him leave to amend by relying on the same reasoning for its dismissal of Tavory's unjust enrichment claim, which Tavory argues was also wrong. As already discussed, that decision was correct. Thus, to the extent Tavory's vague claim for "federal equitable relief" is just a purported federal version of his state law unjust enrichment claim, the district court correctly held it was futile to add it to the complaint.

Tavory next relies on Cyanamid IV as supposedly recognizing a "federal equitable relief" cause of action. But nowhere in that decision do we do so; we note that the district court considered equitable claims (such as unjust enrichment), and certainly the equitable remedy of correction of inventorship was at issue, but we vacated all of the district court's patent-related decisions as based on an erroneous determination of inventorship (i.e., because it was decided under state law rather than federal law). Cyanamid IV, 196 F.3d at 1376. To the extent Tavory is arguing that his "federal equitable relief" claim seeks the correction of the patents to list him as a co-inventor, the

district court clearly did not abuse its discretion by denying leave to add such a duplicative claim.

Lastly, Tavory relies on Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574 (Fed. Cir. 1991). There, we held that the plaintiff could not sue the infringer for damages because, during the entire period of infringement, plaintiff held equitable title but not legal title. Id. at 1579-80. Initially, the legal title holder of the patent at issue entered into an agreement to assign ownership of future inventions to the plaintiff. Id. at 1580-81. The legal owner later executed an actual assignment of ownership to the plaintiff of a patent to such an invention, but he was not assigned the right to sue for past infringement. Id. at 1576. Thus, we held that the patentee could still sue for past infringement but could only be granted equitable relief. Id. at 1579-80. This case is inapposite here. Tavory is not suing for infringement and is not seeking equitable relief for infringement. If he was adjudicated to be a co-inventor he would assume legal title retroactive to issuance because he has never assigned his ownership interests in the patents-in-suit, if any. Thus, Tavory would never have held equitable title but not legal title. And Arachnid certainly does not support a vague cause of action for unspecified "federal equitable relief." Therefore, the district court did not abuse its discretion by denying leave to amend the complaint.

## CONCLUSION

For the reasons provided above, the judgment is affirmed.

NEWMAN, Circuit Judge, concurs in the result

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1527

OREN TAVORY,

Plaintiff-Appellant,

v.

NTP, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Virginia in case no. 3:06-CV-628, Chief Judge James R. Spencer.

NEWMAN, Circuit Judge, concurring in the judgment.

I too would dismiss Mr. Tavory's claims. I would dismiss on either of two grounds: first, for laches, for no error has been shown in the district court's finding that "[t]he Plaintiff's delay in asserting his authorship has been excessive and unreasonable," Tavory v. NTP, Inc., 495 F. Supp. 2d 531, 537 (E.D. Va. 2007); and second, on the ground of estoppel by silence when there was a clear duty to speak, for during Mr. Tavory's participation in the litigation between NTP and Research in Motion on these patents, he did not mention the possibility of his joint inventorship. As the district court observed, starting with Mr. Tavory's deposition in 2002 and throughout that litigation, from trial to appeal to remand to settlement, Mr. Tavory did not state that he was the creator of "the key to the

invention," as he now states. The district court observed that "the first time that Tavory claimed to be the author of the source code was in 2006, after Mr. Campana [the principal named inventor] had passed away, and after a healthy settlement between NTP and Research In Motion had been reached." Tavory, 495 F. Supp. 2d at 537 n.4.

Mr. Tavory does not dispute these facts. His explanation, that no one asked him if he was a joint inventor, does not excuse this silence, in the circumstances of his knowledge of and participation in the litigation. The undisputed facts evoke prima facie laches and estoppel, which have not been rebutted. On this ground, I concur in the dismissal.

This court, in finding that Mr. Tavory is not a joint inventor, propounds several purported rules of joint inventorship. For example, the majority opinion states that "inventors are not required to have known how to reduce their conceived inventions to practice to establish conception." Maj. op. at 10. That statement is sometimes applicable, but it is far from a general rule. The courts have often held, that "conception and reduction to practice go hand in hand;" that is, on the facts of that case, there is no conception without reduction to practice. See, e.g., Dow Chem. Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1341 (Fed. Cir. 2001). As another confusing statement, the court bases its inventorship decision on the statement that "[a]n invention may be novel and non-obvious as a whole and yet be a combination of elements that are all individually well-known in the prior art by skilled artisans." Maj. op. at 7. That statement of law is correct, but we are not told how it negates Mr. Tavory's claim to have contributed a novel element to the claimed invention. Other statements of law are of equally obscure relevance, although their applicability to these facts is suggested.

Whether or not Mr. Tavory should have been or could have been named as a joint

2007-1527                                    2

inventor, he waited too long to make the claim.  That is a sufficient ground of affirmance.