NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**GREGORY C. JAMES,**
*Plaintiff-Appellant*

**v.**

**J2 CLOUD SERVICES, LLC, ADVANCED
MESSAGING TECHNOLOGIES, INC.,**
*Defendants-Appellees*

_____

2019-2016

_____

Appeal from the United States District Court for the Central District of California in No. 2:16-cv-05769-CAS-PJW, Senior Judge Christina A. Snyder.

_____

Decided:  July 28, 2020

_____

OBI ILOPUTAIFE, Cotman IP Law Group, PLC, Pasadena, CA, for plaintiff-appellant.  Also represented by DANIEL CHARLES COTMAN.

GUY RUTTENBERG, Ruttenberg IP Law, PC, Los Angeles, CA, for defendants-appellees.  Also represented by BASSIL GEORGE MADANAT.

_____

Before DYK, TARANTO, and HUGHES, *Circuit Judges*.

DYK, *Circuit Judge*.

U.S. Patent No. 6,208,638 ("the '638 patent") is owned by Advanced Messaging Technologies, Inc., licensed to J2 Cloud Services, LLC (collectively, "defendants"), and lists Jaye Muller and Jack Rieley as the inventors. Appellant Gregory C. James claims to be the sole inventor of the inventions claimed in the '638 patent. James sued the defendants in the United States District Court for the Central District of California, seeking correction of inventorship under 35 U.S.C § 256 and asserting various state-law claims based on his claimed inventorship. The district court entered summary judgment in favor of the defendants and against James. We *affirm*.

## BACKGROUND

The '638 patent is entitled "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages Over a Circuit or Packet Switched Network." J.A. 39. The patent is directed to sending messages using telephone and facsimile units connected to circuit switched networks (such as telephone networks) through a communications server connected to a packet switched network (such as internet networks) that uses internet protocols. The '638 patent claims methods and systems that are directed to receiving an incoming call signal and sending a digital representation of the signal to final destinations using communication servers. The patent discloses embodiments where the communications server digitizes audio messages received from a circuit switched network (e.g., voicemails) and then sends the digitized messages as an email attachment to the recipient. It appears that the claims also cover converting and sending facsimile messages through emails. A representative claim is method claim 13:

A method comprising:

> receiving a first incoming call signal destined for a first communications server for processing of an audio message into a digital representation;
>
> determining if a first condition has occurred;
>
> redirecting the first incoming call signal from the first communications server to a second communications server based on the determining of the first condition, wherein the first incoming call signal includes a particular inbound address uniquely associated with a user account and at least one destination address on a packet switched network, and wherein the particular inbound address remains unchanged during the redirecting;
>
> extracting the particular inbound address;
>
> determining, based on the particular inbound address, a user account status and the at least one destination address on the packet switched network; and,
>
> sending the digital representation to the at least one destination address, wherein the particular inbound address is uniquely assigned to the user account and the at least one destination address comprises at least one email address.

J.A. 54 (alterations omitted). The named inventors are Jaye Muller and Jack Rieley. James asserts that he is the sole inventor of the inventions claimed in the '638 patent based on a system he developed for Muller and Rieley in the mid-1990s.

We state the facts in James's favor as this appeal arises from a grant of summary judgment.  In 1994, Muller and Rieley, the named inventors of the '638 patent, came up with the idea to receive voicemails and faxes through email.  In December 1995, they founded JFAX Communications, Inc. ("JFAX") to commercialize this idea.  Also in late 1995, Muller and Rieley asked James, who was in Australia, to develop a prototype that sent voicemails and faxes (that were addressed by a telephone number) to an email address.

After demonstrating a prototype, James traveled to the United States to develop a commercial system for JFAX. In February 1996, James, on behalf of GSP Software (a partnership he "contemplated" with his friends), entered into a Software Development Agreement with JFAX, where GSP Software agreed to develop commercially viable "Fax to E-Mail," "E-Mail to Fax," and "Voice-Mail to Email" systems.[1]  After completing his work, James returned to

---

[1]   The Software Development Agreement refers to the "Fax to E-Mail" system as

> [a] commercially viable system for enabling faxes to be received via advanced telecommunications equipment located anywhere in the world and then transmitted over the Internet to electronic mail addresses of JFAX customers[;]

the "E-Mail to Fax" system as

> [a] commercially viable system for enabling faxes to be sent by via JFAX using popular word processor, spreadsheet or graphics software programs. The outgoing faxes will be sent via the Internet to a JFAX Server and forwarded as fax messages to any fax number in the world[; and]

the "Voice-Mail to Email" system as

Australia in 1996 and was compensated by JFAX stock that he later sold.

The patent application underlying the '638 patent was filed by JFAX on April 1, 1997. The patent issued on March 27, 2001, listing Rieley and Muller as the inventors.[2] The '638 patent was eventually assigned to defendant Advanced Messaging Technologies, Inc. and licensed to defendant j2 Cloud Services, LLC. By 2016, JFAX changed its name several times and ultimately became defendant j2 Cloud Services, LLC.

James asserts that the JFAX system is his invention. James also claims that the JFAX system is the inventions claimed in the '638 patent and that Muller and Rieley wrongfully secured a patent on that system.

On August 3, 2016, James (having learned of the '638 patent) filed a complaint in the District Court for the Central District of California against Advanced Messaging Technologies, Inc. and j2 Cloud Services, Inc.,[3] asserting sole inventorship of claims of the '638 patent and seeking correction of inventorship under section 256. On motion,

---

[a] commercially viable system for enabling voice mail messages to be received via advanced telecommunications equipment located anywhere in the world and then transmitted over the Internet to electronic mail addresses of JFAX customers.

J.A. 104–05.

[2]   On December 9, 2008, the United States Patent and Trademark Office issued an ex parte reexamination certificate for the '638 patent that amended claims and added new claims.

[3]   On September 27, 2016, James filed a first amended complaint, adding defendant j2 Cloud Services, LLC to the action.

the district court dismissed the complaint for "lack[] [of] standing to assert [an] inventorship claim" on the grounds that James failed to sufficiently allege that "he ha[d] an ownership or financial interest in the '638 patent." J.A. 1511. On appeal, we reversed because there were factual disputes as to whether James had assigned his claimed patent rights to the defendants. *James v. j2 Cloud Servs., LLC*, 887 F.3d 1368, 1373–76 (Fed. Cir. 2018).

On remand, the parties stipulated to limited discovery concerning James's inventorship claim and issues involving the statute of limitations. On January 17, 2019, James filed the operative (fourth) amended complaint, asserting sole inventorship of the claims of the '638 patent and alleging claims for fraudulent concealment, unjust enrichment, and conversion.[4]

On defendants' motion, the district court granted summary judgment, holding that the "defendants [we]re entitled to summary judgment on [James's] claim for sole inventorship of the [']638 patent." J.A. 11. The district court found that the evidence that James relied on at most showed only that "he developed a prototype of a system that could convert a voicemail or fax to an email." J.A. 8. It held that there was no clear and convincing evidence showing that James's system practiced the patent claims or that James "alone conceived of each element of the 40 claims of that patent." *Id.* There also was no "genuine dispute as to whether Muller and Rieley at least shared in

---

[4]    James also asserted a claim for violation of California's unfair competition law. The district court dismissed this claim for failure to state a claim. James does not challenge this dismissal on appeal.

the conception of some of the subject matter of the claimed invention."[5]  J.A. 11.

As to the state-law claims, the district court held that the three-year "statute of limitations on [James's] state law claims started to run in 2001 (at the latest) and that each of [his] state law claims [we]re barred by the applicable statute of limitations" because he had "possessed information that put him on notice of his claims as early as 2001 . . . [but] was not diligent" in pursuing the claims.  J.A. 21–22.

James now appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).  We review grant of summary judgment de novo.

## DISCUSSION

### I. Sole Inventorship Claim

James argues that the district court erred in granting summary judgment against him on his inventorship claim.

"Determining 'inventorship' is nothing more than determining who conceived the subject matter at issue[] . . . ." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994).  "It is settled that in establishing conception a party must show possession of every feature recited in the count, and that every limitation of the count must have been known to the inventor at the time of the alleged conception." *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985).  "[I]nventorship is determined on a claim-by-claim basis." *Gemstar-TV*

---

[5]  The district court also concluded that the inventorship claim was barred by the doctrine of laches because James "had enough information to place upon him a duty of inquiry and thus a reasonable person in his position should have known that the [']639 Patent issued in 2001" but delayed for 15 years in filing suit.  J.A. 15.  In light of our disposition, we do not reach the issue of laches.

*Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004). "The inventors as named in an issued patent are presumed to be correct." *Hess v. Advanced Cardiovascular Sys.*, Inc., 106 F.3d 976, 980 (Fed. Cir. 1997) (quoting *Amax Fly Ash Corp. v. United States*, 514 F.2d 1041, 1047 (Ct. Cl. 1975)).

We conclude that the district court did not err in granting summary judgment against James on the inventorship claim.

Here, the evidence that James points to does not support his claim that he conceived the inventions in the '638 patent. James testified that (1) he believed he was the "sole inventor of the technology claimed in the '638 patent," J.A. 340, and (2) when he looked at the patent he realized "that's exactly what [he] invented," J.A. 377. Such conclusory and self-serving testimony is insufficient to survive a motion for summary judgment. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory . . . assertions [of a witness] cannot raise triable issues of material fact on summary judgment."); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (holding that a witness's conclusory assertion that the evidence demonstrated "conception, diligence[,] and reduction to practice" did not carry a party's burden on summary judgment); *see also Tech. Dev. Corp. v. United States*, 597 F.2d 733, 747 (Ct. Cl. 1979) ("The proof of conception and/or reduction to practice is a heavy one for either party and requires more than self-serving testimony or uncorroborated records and documents.").

James also asserts that the fact that he was paid JFAX stock gives rise to an inference that he delivered "the later-patented JFAX system." Appellant Br. 15. He also claims that "JFAX's allegedly-2001 press release" admits that his prototype implemented the same functions of the "later-claimed JFAX system" because the press release states that the '638 patent's technology "allow[ed] both faxes and

voice messages to be received without the end user needing either a fax machine or a voice-mail system." *Id.* (quoting J.A. 424).[6] We are unpersuaded by James's arguments that his evidence supports conception.

We conclude that James failed to provide evidence from which a reasonable juror could conclude that he conceived and "possess[ed] . . . every feature recited in the c[laims]" of the '638 patent. *Davis v. Reddy*, 620 F.2d 885, 889 (C.C.P.A. 1980). The district court properly granted summary judgment on James's sole inventorship claim in favor of the defendants.

## II. State-Law Claims

The district court granted summary judgment against James on his state-law claims for fraudulent concealment, unjust enrichment, and conversion because they were barred by the three-year statute of limitations. The basic theory underlying these claims is that James developed the system for JFAX in the mid-1990s, and that the defendants wrongfully secured the '638 patent based on "the inventive systems and methods [he] created." Appellant's Reply Br. 18. Although James's allegations concern his work for Muller and Rieley in the mid-1990s and the '638 patent that issued in 2001, James filed this action in 2016.

James does not dispute that his state-law claims were subject to statute of limitations of at most three years

---

[6] James also argues that "Muller admit[ted] [that] James's system and the '638 patent are the same," citing to an excerpt of Muller's deposition transcript. Appellant Br. 14. However, that excerpt does not appear to have been made part of the record before the district court. In any case, the testimony James points to makes no statement that the system he developed corresponded to all claims of the '638 patent.

under California law.[7]  Under California's discovery rule, the statute of limitations begins to run when a plaintiff suspects or should suspect that his injury was caused by someone's wrongdoing, i.e., when he has "notice or information of circumstances to put a reasonable person on inquiry." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927–28 (Cal. 1988) (emphasis omitted).  The district court here held that the state-law claims were barred by the applicable statute of limitations because the evidence established only one legitimate inference that James "possessed information that put him on notice of his claims as early as 2001 and that he was not diligent."  J.A. 21.

James claims that the defendants wrongfully concealed the filing of the application that lead to the '638 patent despite their duty to inform him of the application under this court's decision in *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1373 (Fed. Cir. 1999) (holding that there was "an equitable duty to disclose the patent application to the true inventors").  James also alleges that the Software Development Agreement required the defendants to inform him if they no longer treated the developed software as a secret and that the filing of the '638 patent's application without such a communication breached this duty.  James contends that he had no reason to have learned about the '638 patent in 2001 when it issued because he left JFAX in late 1996 and sold his JFAX shares by early 2000.

---

[7]    In California, fraudulent concealment and conversion claims are subject to a three-year statute of limitations.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054, 1060 (9th Cir. 2008); *Daly v. Pearl Spirits, Inc.*, 438 F. App'x 644, 645 (9th Cir. 2011).  An unjust enrichment claim is subject to a three-year statute of limitations if it is based on fraud or mistake.  *Fed. Deposit Ins. Corp. v. Dintino*, 84 Cal. Rptr. 3d 38, 50 (Ct. App. 2008).

We disagree.  Even if the defendants breached their duty to James by failing to advise him of the filing of the '638 patent's application, he would still have had notice of the issuance of the '638 patent in 2001.  Although the application was not public, by the time the patent issued, James would have learned patent applications had been filed by the defendants' predecessors.

It is undisputed that James received documents concerning JFAX's IPO in June 1999.[8]  He received the "Underwriting Agreement," which states that JFAX filed "a registration statement on Form S-1" with the Securities and Exchange Commission ("SEC"), J.A. 617, and that "[JFAX] and its subsidiary own[ed] or ha[d] sufficient rights to use all patents, patent rights . . . currently employed by them in connection with the business . . . operated by them[] . . . ," J.A. 629.  James in June 1999 also received JFAX's "Selling Stockholders' Irrevocable Power of Attorney" ("Power of Attorney") and signed this document acknowledging "receipt of a copy of the Amendment No. 1 to the Registration Statement on Form S-1 . . . (the 'Registration Statement')" and his "review[] [of] the Registration Statement."[9]    J.A. 1339.    The Registration

---

[8]    JFAX Communications, Inc. changed its name to JFAX.COM, Inc. on April 15, 1999, prior to its IPO.  We refer to both names as "JFAX" in this opinion.

[9]    The Power of Attorney also states:

The undersigned [(i.e., James)] has no knowledge of any material fact or condition that is not set forth in the Registration Statement . . . .

The undersigned will furnish any and all information which [JFAX] . . . deems necessary or desirable in connection with the preparation and filing of all amendments, post-effective amendments and supplements to the Registration Statement[] . . . .

Statement, filed with the SEC on May 26, 1999, makes clear that "[JFAX had] multiple pending U.S. patent applications . . . for proprietary aspects of the major components of [its] technology, but [JFAX had] no issued patents." J.A. 1335.

A reasonable person who received the Underwriting Agreement and Power of Attorney would have reviewed the Registration Statement and thus should have known that JFAX had pending patent applications covering "proprietary aspects of the major components of [its] technology" that James alleges to have developed. J.A. 1335. James also testified that he went to JFAX's website "to see what they're doing" after he completed his work, J.A. 373, and that he was familiar with searching patents. James was on notice that the defendants had a patent application that likely would issue and a reasonable person would have conducted a search for the issued patent.

In any case, the '638 patent issued on March 27, 2001, and on May 17, 2001, j2 Global Communications, Inc.[10] issued a press release, announcing the issuance of the '638 patent with Muller and Rieley as the inventors and stating that the patent's technology "allow[ed] both faxes and voice messages to be received without the end user needing either a fax machine or a voice-mail system." J.A. 424. Indeed, James testified that he was "aware that j2 had patents" "all along."[11] J.A. 1029. Given these undisputed facts, the district court did not err in concluding that a reasonable person in James's position would have

---

J.A. 1342.

[10]   j2 Global Communications, Inc. is one of the previous names used by defendant j2 Cloud Services, LLC.

[11]   James contends that he knew "j2" rather than "JFAX" had patents. Appellant's Reply Br. 2. However, there is no factual dispute that the later "j2" entities changed their corporate name from JFAX.

known that JFAX and its successors had secured the '638 patent in 2001 and the nature of that patent.

We conclude that James had sufficient "notice or information of circumstances to put a reasonable person on inquiry" regarding his state-law claims concerning the '638 patent by 2001. *Jolly*, 751 P.2d at 927–28. Here, "the uncontradicted facts . . . are susceptible of only one legitimate inference, [and thus] summary judgment [wa]s proper." *Id.* at 928–29.

## CONCLUSION

We affirm the district court's grant of summary judgment against James on his sole inventorship claim and state-law claims.

## **AFFIRMED**